1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7

8

TONY ALAN WILLIAMS,               )        3:06-CV-00180-HDM (RAM)
                                  )
9                Plaintiff,        )
                                  )
10                                )        **REPORT AND RECOMMENDATION**
        vs.                        )        **OF U.S. MAGISTRATE JUDGE**
11                                )
DR. STEVEN MACARTHUR, et. al.      )
12                                )
                Defendants.        )
13 _____ )

14        This Report and Recommendation is made to the Honorable Howard D. McKibben,

15 Senior United States District Judge.  The action was referred to the undersigned Magistrate

16 Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

17        Before the court is Defendants' Motion for Summary Judgment(Doc. #27).[1] Plaintiff

18 opposed the motion (Doc. #33, #42) and Defendants replied (Doc. #43).

19                              **BACKGROUND**

20        Plaintiff Tony Alan Williams is an inmate at Ely State Prison (ESP). (Docket).  Plaintiff's

21 Count I alleges that Defendants MacArthur,[2] D'Amico, McDaniel, and Endel were deliberately

22 indifferent to Plaintiff's serious medical condition, which Plaintiff alleges resulted from

23

24        [1]The court notes that the section of Defendants' motion (#27) where they list all the "material facts not genuinely in issue" is single spaced and thus not in conformity with Local Rule 10-1, which
25 states, in relevant part, "Except for exhibits, quotations, the caption, the title of the court, and the name of the case, lines of typewritten text shall be double-spaced ..."  Further, it appears that Defendants
26 also decided to reduce the font size of this section to 10 point font rather than the 12 point font that is required under LR-10-1.  The court finds the liberties Defendants have taken with the formatting of
27 their motion make it very difficult to read.  Defendants are cautioned to make sure they adhere to the Local Rules in future filings.

28        [2]Plaintiff spelled Defendant MacArthur's name incorrectly in his filings, as "McArthur."

Methicillin Resistant Staphylococcus Aureus (MSRA).  (Doc. #9).  The events Plaintiff sets forth in Count I allegedly occurred between sometime in 2002 and January of 2006.  Plaintiff makes detailed allegations regarding the alleged maltreatment he received during this period for a skin infection that was allegedly "eating through" Plaintiff's flesh, including his leg, groin area, and armpits.  (*Id*.).  Although Plaintiff was apparently convinced of the serious nature of his condition, Defendants were allegedly dismissive of him and told him that acne or spider bites were to blame for the skin irritation he experienced.  (*Id*.).  According to Plaintiff, he feared that Defendant MacArthur "was trying to bring about Plaintiff's death" by allegedly denying to Plaintiff treatment needed to cure Plaintiff's condition.  (*Id*.).

In Count II Plaintiff alleges that Defendant MacArthur was deliberately indifferent to Plaintiff's serious medical needs when he refused to treat Plaintiff, despite being informed in writing by Plaintiff that MRSA could cause death by organ failure or toxic shock.  (*Id*.).  He further alleges that Defendant MacArthur refused to culture Plaintiff's wounds for a long time, and refused to prescribe the appropriate medication to kill the infection.  (*Id*.).  He also alleges that Defendant D'Amico was deliberately indifferent to Plaintiff's serious medical needs when Plaintiff informed Defendant of "the situation" and Defendant continue to allow Plaintiff to suffer.  (*Id*.).  In Count II Plaintiff also alleges that Defendants Endel and McDaniel were deliberately indifferent when, after Plaintiff made them aware of his condition and sought help from each of them, they "recklessly disregarded Plaintiff's pleas for help ..." (*Id*.).  Plaintiff alleges that he complained of these misdeeds through the "kite" system and by filing inmate grievances.  (*Id*.).

## DISCUSSION

**A**.     **Standard for Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there

are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed. R. Civ. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

3

The court must defer to State prison officials regarding day-to-day prison operations. *Turner v. Safley*, 482 U.S. 78, 84-85 (1986)(holding that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform ..." and additional deference to prison authorities is due where state penal system is involved).  In order to defeat summary judgment the plaintiff must demonstrate the  regulations at issue are not reasonably related to legitimate penological interests.  *Bahrampour v. Lampert*, 356 F.3d 969, 973 (9th Cir. 2004).

**B.      Exhaustion of administrative remedies**

The Prison Litigation Reform Act ("PLRA") bars a suit brought by a prisoner with respect to prison conditions under **§** 1983 or any other Federal law until such administrative remedies as are available are exhausted.  The PLRA is codified in 42 U.S.C. § 1997e et. seq. and provides in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement is an affirmative defense that must be raised and proved by the defendant.  *Wyatt v. Terhune*, 315 F.3d 1108, 1112 (9th Cir. 2003).

In *Woodford v. Ngo* the U.S. Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance. 126 S. Ct. 2378, 2382 (2006).  However, even after *Woodford*, a prisoner is only required to exhaust available remedies.  *See, e.g., Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)(holding that where Defendants actions prevented or intimidated prisoner Plaintiff from filing further grievances they were estopped from asserting failure to exhaust administrative remedies as a defense). Where the actions of prison administrators foreclose the option of further appeal, or only provide for an appeal upon pain of punishment, the PLRA does not require exhaustion.  *See id.*

4

For prisoners within the NDOC system, exhaustion of administrative remedies includes complying with the grievance procedures set forth in Administrative Regulation 740 (AR 740). (Doc. #34, Exh. J).  Under AR 740 the inmate grievance procedure includes three levels of review: one informal, and two formal.  (*Id.*).  In order for an inmate to exhaust his or her administrative remedies he or she must pursue the grievance through all levels.  (*Id.*).  If the inmate is dissatisfied with the grievance response at the first two levels then he or she must appeal the decision within five days after receiving the response.  (*Id.*).  Usually, a plaintiff's administrative remedies are not considered exhausted until after the second formal grievance has been denied may a Plaintiff bring suit.  (*Id.*)

Here, Defendants argue that Plaintiff has not exhausted his administrative remedies. (Doc. #27).  The records before the court show that Plaintiff made five written grievances that relate to the subject matter of this case.  (*Id.*; Doc. #29, D-MSJ 5-16).  In the first and the third grievances (grievance log numbers 2004-24-2866 and 2004-24-64, respectively) Plaintiff checked a box to indicated that he agreed with the responses.  (Doc. #29, D-MSJ 5-16).  The court notes that it is specifically set forth on this form, which Plaintiff signed, that "failure to sign constitutes abandonment of the claim.  A first level grievance may be pursued in the event the inmate disagrees."  (Doc. #27).  In response to the second informal grievance (log number 2004-24-7042) the prison officials requested more information from Plaintiff about the specific of his complaints but Plaintiff apparently failed to follow up.  (Doc. #29, D-MSJ 5-16).  Plaintiff acknowledged the denial of his fourth informal grievance on this matter (log number 2005-24-3335) but failed to check whether or not he agreed with it.  (*Id.*).  According to the affidavit of Adam Endel, Plaintiff did not pursue the matter further or appeal this particular grievance to the next level.  (Doc. #29, D-MSJ 1-4.2).

Plaintiff filed his fifth and final grievance (log number 2005-24-4559) on May 5, 2005. (Doc. #29, D-MSJ 5-16).  It was returned to him the next day, unanswered, with a form attached indicating that the grievance was an abuse of the inmate grievance procedure, with the reason given being "specific claims or incidents previously filed by the same inmate" and

indicating grievance log numbers 2005-24-3355 and 2005-24-64 (the third and fourth grievances) as the previous grievances regarding the same claims or incidents. (*Id.*). According to the copy provided to the court as an exhibit to this motion, Plaintiff filed the third grievance on December 30, 2004 and the fourth grievance on March 3, 2005. (*Id.*). The court's examination of these documents reveals that although they all concern Plaintiff's complaints regarding the condition he believed to be MRSA, they concern different recurrences of said condition. For example, the fourth grievance says:

> "Having received treatment for MRSA Staph infection, the symptoms returned after one month. I informed Dr. McArthur [sic] and he would not acknowledge that it was MRSA, dismissing it as a pimple. The doctor's disregard for my serious medical problem is depriving me of adequate treatment and subjecting me to pain and suffering."

Thus, we can infer that the condition Plaintiff was then complaining of, in March, was a recurrence of the condition complained of in the earlier third grievance, which was filed in December. The response to the fourth grievance, received on April 5, 2005, stated that at his last doctor's visit the infection had cleared and that if it had since returned Plaintiff should submit a kite (request for medical treatment). Defendants do not now argue that Plaintiff never submitted a kite for treatment after they informed him of their response to the fourth grievance. In fact, Defendants admit that Plaintiff filed two kites in April, both seeking treatment for his condition. (Doc. #27, p. 11). On April 20, 2005 a culture was taken from a wound on Plaintiff's buttocks and it tested positive for MRSA. (*Id.*). Subsequently, on April 22, 2005, Plaintiff met with Defendant Dr. MacArthur regarding treatments for his condition.[3] According to portion of Plaintiff's deposition which Defendants have provided as an exhibit, the April 22nd medical appoint resulted in a disagreement between Plaintiff and Defendant Dr. MacArthur. (*Id.*). Essentially, Defendant Dr. MacArthur wanted to prescribe a certain medication for Plaintiff and Plaintiff argued with him regarding whether that treatment would be effective (based, apparently, on Plaintiff's own reading on the subject of MRSA).

---

[3]Although the Defendants have not called to the court's attention when this meeting occurred, the court gathers that it is the "4-22-05" incident discussed in the Plaintiff's deposition. (Doc. #29, D-MSJ 198 et. seq.).

6

1    (*Id.*). As a result of the ensuing disagreement the appointment was cancelled and Defendant

2    did not prescribe the medicine to treat Plaintiff's condition.  (*Id.*).  Plaintiff then, roughly a

3    week later on May 1, 2005, filed the fifth grievance.  (Doc. #29, D-MSJ 15).  The grievance was

4    rejected as improper.  (*Id.*).  As such, Plaintiff could not appeal the fifth grievance, contrary

5    to Defendants' argument (Doc. #27, p. 24), because no actual response was given.  If he had

6    attempted to appeal it, he could have been subject to discipline, since inmates who continue

7    to file improper grievances may be issued conduct violations.  A.R. 740.01, 1.5.5.  The court

8    agrees with Plaintiff that "[s]ince an appeal of a grievance is merely the furtherance of that

9    grievance and Plaintiff had been notified that his grievance was not grievable, it stands to

10   reason that he had no further administrative remedy."  (Doc. #33-1).

11       The court disagrees with Defendants' argument that Plaintiff waived his right to

12   disagree with the response to any of the grievances simply because he checked "inmate

13   agrees" with regards to the responses given to the first and third grievances.  Plaintiff's

14   indication of agreement with the responses to those grievances, occurring on November 10,

15   2004 and on January 20, 2005, does not mean that Plaintiff cannot later, in May of 2005, grieve

16   later treatment or disagree with responses to later filed grievances.

17       For the foregoing reasons, Plaintiff has exhausted his remedies and his claim cannot

18   be foreclosed for failure to exhaust.

19   **C.    Deliberate Indifference**

20       Deliberate indifference to a prisoner's serious illness or injury states a cause of action

21   under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  In order to prove deliberate

22   indifference, a plaintiff must show that prison staff denied, delayed, or intentionally interfered

23   with medical treatment or that the way prison staff provided medical care indicates deliberate

24   indifference, and that the plaintiff sustained damages as a result of such conduct.  *Hutchinson*

25   *v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  Mere negligence on the part of medical staff

26   is not enough to prove deliberate indifference.  *Id.*  "A defendant must purposefully ignore

27   or fail to respond to a prisoner's pain or possible medical need in order for deliberate

28

1   indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir 1992),

2   overruled in part on other grounds in *WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

3   A medical need is "serious" where the "failure to treat a prisoner's condition could result in

4   further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin,* 974

5   F.2d at 1059.  The court must consider whether a reasonable doctor would think that the

6   condition is worthy of comment, whether the condition significantly affects the prisoner's

7   daily activities, and whether the condition is chronic and accompanied by substantial pain.

8   *See Lopez v. Smith*, 203 F.3d 1122, 1131-32 (9th Cir. 2000).  However, prison medical staff do

9   not violate the Eighth Amendment simply because their opinion concerning medical

10   treatment conflicts with the opinion of the inmate patient. *Franklin v. Oregon*, 662 F.2d 1337,

11   1344 (9th Cir. 1981); *see also Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

12       Here, the evidence shows that Plaintiff received consistent treatment for his skin

13   condition.  (Doc. #27).  Even Plaintiff's complaint lists the numerous occasions on which

14   NDOC medical staff treated his skin condition.  (Doc. #9).  Although Plaintiff himself

15   suspected that the condition was MRSA earlier than the NDOC medical staff discovered its

16   identity as such, the evidence shows that Plaintiff received treatment of various kinds on

17   multiples occasions.  (Docs. #27, #29).  Although NDOC staff may have been negligent in

18   diagnosing Plaintiff's condition as spider bites or acne rather than MRSA, mere negligence

19   does not rise to the level of deliberate indifference. *Hutchinson,* 838 F.2d at 394.  Likewise,

20   when Plaintiff disagreed with Defendant Dr. MacArthur regarding the proper antibiotic with

21   which he should be treated, under *Sanchez* and similar cases that difference in opinion does

22   not give rise to an Eighth Amendment Claim.  891 F.2d at 242.   Plaintiff's allegations of

23   Defendant Dr. MacArthur's rude statements (such as his alleged suggestion that Plaintiff catch

24   a praying mantis to eat the spiders Defendant suspected were biting Plaintiff or his alleged

25   comment that Plaintiff's infection was probably due to Plaintiff being a "dirty person")

26   although disrespectful, do not create a triable issue of fact regarding whether Defendant was

27

28                            8

deliberately indifferent to Plaintiff's medical needs. Accordingly, Defendants Motion for Summary Judgment (Doc. #27) should be granted.

### **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #27).

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   April 4, 2007.

_____
UNITED STATES MAGISTRATE JUDGE